DECISION AND JUDGMENT ENTRY
This is an appeal from a Jackson County Common Pleas Court summary judgment entered in favor of The Pillsbury Company, defendant below and appellee herein.
Stanley Bartkowiak, plaintiff below and appellant herein, raises the following assignment of error for review:
 "THE TRIAL COURT ERRED IN HOLDING THAT THE TIME LIMITS OF R.C. 4123.90 CONTROLS [SIC] AN ACTION FOR INTENTIONAL TORTS AGAINST EMPLOYERS."
Our review of the record reveals the following facts pertinent to the instant appeal. From 1991 to 1996, appellant worked at appellee's Wellston, Ohio facility. After being diagnosed with carpal tunnel syndrome, appellant applied for and received workers' compensations benefits. Appellant continued to work, however, on "light duty" jobs within the facility.
After appellant's sixth violation of appellee's tardy policy, appellee suspended him. Appellee subsequently offered appellant an opportunity to return to work, provided he signed a "last chance agreement." The agreement essentially provided that appellant would forfeit his back pay and that appellant would not file a grievance regarding his suspension. The agreement further provided that if appellant did not sign the agreement, appellee would deem appellant to have voluntarily resigned.
Appellant refused to sign the agreement. On January 10, 1996, appellee thus considered appellant to have voluntarily resigned.
On December 3, 1996, appellant filed a complaint against appellee. In his complaint, appellant alleged:
 "2. From April 1991 until February 1996 the Plaintiff was an employee of the Defendant at the plant in Wellston, Ohio.
 3. During the term of his employment the plaintiff applied for Worker's Compensation benefits which was granted by the Ohio Industrial Commission.
4. The Defendant is a self-insured employer.
 5. After the award of Worker's Compensation benefits the Defendant hired investigators to follow Mr. Bartkowiak not only at the plant but even to his residence and doctor's visits.
 6. The investigators followed Mr. Bartkowiak and informed neighbors of the Plaintiff that Mr. Bartkowiak was being investigated because he was crazy and going to burn his house down. This allegation is wholly untrue and damages the reputation of the Plaintiff.
 7. Eventually the Defendant provided a `Last Chance Agreement' for the Plaintiff to sign admitting liability. Due to his refusal to sign the agreement the Defendant claimed that the Plaintiff `voluntarily resigned.'
 8. The Defendant has engaged in a course of conduct to harass the Plaintiff because of the award of Worker's Compensation benefits. This has caused the Plaintiff to suffer severe emotional distress and has required psychological and medical treatment.
 9. The Defendant consistently harasses employees who have received Worker's Compensation to the point of forcing termination of their employment.
 Wherefore, the Plaintiff requests that judgment be entered against the Defendant in an amount exceeding $25,000.00 plus unspecified punitive damages for their wrongful and willful conduct."
At his deposition, appellant explained that after he filed his claim for workers' compensation, appellee engaged in conduct designed to force him to terminate his employment. Appellant claimed that appellee continually harassed him by having supervisors check his work and by having a security guard follow him. Appellant further asserted that appellee hired investigators to follow him and that one of the investigators slandered him.
Appellant also alleged that appellee applied its "no fault" tardy policy in a discriminatory manner. Appellee's "no fault" tardy policy provides that if an employee is even one minute late, regardless of the reason, the employee will be considered tardy. The policy disciplines the employee through six progressive steps, beginning with an informal warning and ending with suspension or termination. Appellant alleged that appellee typically did not strictly enforce the policy as to most employees. Appellant believed, however, that because he filed a workers' compensation claim, appellee strictly enforced the policy against him.
On October 29, 1998, appellee filed a motion for summary judgment. Appellee argued that appellant's complaint alleged a claim for retaliatory discharge subject to the provisions of R.C.4123.90. Appellee noted that R.C. 4123.90 requires a plaintiff alleging retaliatory discharge to file the complaint within one hundred eighty days of his termination. Appellee contended that because appellant had not complied with the R.C. 4123.90 filing requirement, it was entitled to judgment as a matter of law.
To counter appellee's motion, appellant contended that his complaint was not brought pursuant to R.C. 4123.90. Rather, appellant claimed that his complaint alleged an independent cause of action, namely intentional infliction of emotional distress. Thus, appellant argued that his failure to file the complaint within one hundred eighty days of his termination was inconsequential.
On January 21, 1999, the trial court granted appellee's motion for summary judgment. The court concluded that appellant's complaint was one for retaliatory discharge, governed by the R.C.4123.90 filing requirements. The trial court determined that appellant had not filed his complaint within the one hundred eighty day time limit and, thus, concluded appellee was entitled to judgment as a matter of law. Appellant filed a timely notice of appeal.
In his sole assignment of error, appellant complains that the trial court erred by granting appellee's motion for summary judgment. In particular, appellant asserts that the trial court incorrectly determined that R.C. 4123.90 barred appellant's cause of action. Appellant maintains that his complaint does not set forth a claim for retaliatory discharge, pursuant to which the R.C. 4123.90 one hundred eighty day filing time limit applies. Rather, appellant contends that his complaint alleges that appellee committed the tort of intentional infliction of emotional distress and, consequently, the R.C. 4123.90 time limit does not apply. Appellant argues that he presented evidence demonstrating that appellee intentionally harassed appellant because he filed a workers' compensation claim. Appellant asserts that the evidence demonstrates that appellee's "policies show a constant scheme of harassment against individuals who have filed compensation claims." Appellant further asserts that "[i]nasmuch as R.C. 4123.90 restricts an employee's action against an employer for an intentional tort it is unconstitutional."
Appellee asserts that the trial court properly concluded that appellant's complaint stated a cause of action for retaliatory discharge, pursuant to which the R.C. 4123.90 time limit applied. Appellee notes that appellant testified at his deposition that he filed the complaint against appellee to address the retaliation that he allegedly suffered after filing his workers' compensation claim. Appellee contends that appellant's complaint essentially states that appellee harassed him in retaliation for having filed a workers' compensation claim. Appellee additionally asserts that to the extent appellant seeks to defeat the application of the R.C. 4123.90 filing requirements by alleging that his complaint states a cause of action for intentional infliction of emotion distress, Ohio law does not permit appellant to maintain an independent cause of action.
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786,788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher, supra; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1031.
In the case at bar, we agree with the trial court's conclusion that appellant's complaint, to the extent it seeks relief pursuant to the retaliatory discharge statute, was not timely filed. Thus, as to this issue, we believe that the trial court properly granted appellee's summary judgment motion.[1]
R.C. 4123.90 prohibits employers from taking punitive action against employees who file workers' compensation claims. The statute provides:
 No employer shall discharge, demote, reassign, or take any other punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * * The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge * * *."
(Emphasis added.)
In the case at bar, appellant does not dispute that more than one hundred eighty days elapsed from the date he was terminated, January 10, 1996, to the date he filed his complaint, December 3, 1996. Consequently, to the extent that appellant's complaint sought relief under R.C. 4123.90, we agree with the trial court's conclusion that appellee was entitled to judgment as a matter of law.
We disagree, however, with the trial court's conclusion that pursuant to Balyint v. Arkansas Best Freight System, Inc. (1985),18 Ohio St.3d 126, 480 N.E.2d 417, and Hyatt v. Neaton AutoProducts Mfg., Inc. (1995), 103 Ohio App.3d 591, 660 N.E.2d 529, appellant could not maintain a cause of action for intentional infliction of emotional distress. Because the trial court did not believe that appellant could maintain such an action, the trial court did not address: (1) whether appellant's complaint sufficiently alleged a cause of action for intentional infliction of emotional distress;[2] or (2) whether, assuming that appellant's complaint alleges a cause of action for intentional infliction of emotional distress, summary judgment in appellee's favor regarding appellant's intentional infliction of emotional distress claim would be proper.
The trial court essentially determined that Balyint v. ArkansasBest Freight System, Inc. (1985), 18 Ohio St.3d 126,480 N.E.2d 417, and Hyatt v. Neaton Auto Products Mfg., Inc. (1995),103 Ohio App.3d 591, 660 N.E.2d 529, prohibited appellant from maintaining an independent cause of action for intentional infliction of emotional distress.[3] In Balyint, the court held that "[a]n employee of a self-insured employer may maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments." Id., at syllabus. The court further stated: "[W]e hold that relief under R.C. 4123.90 is not an exclusive remedy and that [the employee] [is] not confined to proceeding solely under R.C. 4123.90." Id.,18 Ohio St.3d at 129, 480 N.E.2d at 420.
In Hyatt, the court relied upon Balyint to conclude that an employee may not maintain an "independent cause of action for retaliatory discharge under common law." Id.,103 Ohio App.3d at 594, 660 N.E.2d at 531. The Hyatt court concluded that Balyint
was "limited on its facts and applies only when an employer intentionally terminates the workers' compensation payments to the injured employee." Id.
In the case at bar, the trial court apparently determined that the foregoing language permitted an independent cause of action only for termination of workers' compensation payments, as opposed to retaliatory actions taken in response to an employee's receipt of workers' compensation benefits.
We note, however, that later cases have held that under certain circumstances, a plaintiff may maintain an independent cause of action for a common law tort against his or her employer. See,e.g., Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,677 N.E.2d 308, certiorari denied (1997), 522 U.S. 1008,118 S.Ct. 586, 139 L.Ed.2d 423 (holding that an at-will employee who is discharged in violation of the whistleblower statute may maintain a common law cause of action against the employer for termination in violation of public policy); Boyd v. Winton HillsMedical Health Ctr. (Mar. 5, 1999), Hamilton App. No. C-980355, unreported (holding that a plaintiff may assert a common law claim for wrongful discharge); see, also, Browning v. NavistarInternatl. Corp. (July 24, 199), Franklin App. No. 89AP-1081, unreported (relying on Balyint to find that R.C. 4123.90 remedy is not exclusive). Moreover, we note that in Rauhuff v. AmericanFan Co. (June 21, 1999), Butler App. No. CA98-08-188, unreported, the court overruled its Hyatt decision. The court reasoned thatKulch essentially rejected the reasoning upon which the Hyatt
decision had rested.
Accordingly, we believe that the trial court incorrectly determined that appellant could not maintain a cause of action for intentional infliction of emotional distress. Because the trial court did not consider the merits of appellant's intentional infliction of emotional distress claim, however, we, as an appellate court, may not consider the issue. Although an appellate court reviews a trial court's decision regarding a summary judgment motion de novo, an appellate court should not usurp the trial court's role by making independent factual determinations and conclusions of law. Rather, as an appellate court, we must review a trial court's judgment. In the case at bar, the trial court did not determine whether summary judgment was appropriate on appellant's intentional infliction of emotional distress claim. As the court stated in Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141:
 "An appellate court (like a trial court) must examine the record to determine whether there is any genuine issue of material fact. An appellate court reviewing a trial court's decision to grant a Civ.R. 56(C) motion must look at the evidence in a light most favorable to the non-moving party, construing all doubt in favor of that party. The court of appeals concluded that its independent consideration of the record could, in effect, cure the trial court's failure to examine the evidence. We cannot accept that conclusion. A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court * * *."
See, also, Commercial Savings Bank v. Jackson (Oct. 6, 1997), Jackson App. No. 97 CA 798, unreported.
Appellee further asserts that appellant's complaint fails to sufficiently allege a cause of action for intentional infliction of emotional distress so as to survive a Civ.R. 12(B)(6) motion to dismiss. We believe, however, that the trial court, on remand, should resolve the issues surrounding appellant's intentional infliction of emotional distress claim.
Having determined that appellant is not precluded from maintaining a cause of action for the tort of intentional infliction of emotional distress,[4] we therefore remand the cause to the trial court for further proceedings consistent with this opinion. Additionally, we hasten to add that our decision should not be construed as a comment upon the merits of appellant's claim.
Accordingly, based upon the foregoing reasons, we sustain, in part, appellant's assignment of error, reverse the trial court's judgment, and remand this matter for further proceedings.
JUDGMENT REVERSED AND CAUSE REMANDED.
[1] We decline to address appellant's argument that R.C.4123.90 is unconstitutional. We note that appellant did not raise the issue during the trial court proceedings and therefore has waived the issue for purposes of appeal. See, generally, State v.Stojetz (1999), 84 Ohio St.3d 452, 455, 705 N.E.2d 329, 335; Hillv. Urbana (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109.
Moreover, we note that appellant raises the issue in the conclusion to his brief. Thus, it is not separately argued as App.R. 16(A) requires and we may disregard the argument. See App.R. 12(A)(2).
[2] Both during the trial court proceedings and on appeal, appellant argues that his complaint asserts a cause of action for intentional infliction of emotional distress.
[3] We note that the trial court's decision with respect to this issue is unclear. The court's decision granting appellee's summary judgment motion states, inter alia:
 "1. This is an action governed by Ohio Revised Code Section 4123.90.
 2. The case of Balyint v. Arkansas Best, 18 Oh. St.3d (1985) does not govern the disposition of this action. [sic]."
[4] In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,453 N.E.2d 666, syllabus, the court defined tort of intentional infliction of emotional distress as follows:
 "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another s subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * *."
In determining whether the conduct giving rise to the tort constitutes "extreme and outrageous" conduct, the Yeager court found comment d to Section 46 of the Restatement of the Law 2d, Torts, (1965), 71, 73, "instructive." Id., 6 Ohio St.3d at 374,453 N.E.2d at 671. Comment d provides:
 "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *"
(quoted in Yeager, 6 Ohio St.3d at 374-75,453 N.E.2d at 671-72).
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and this cause remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
HARSHA, J. KLINE, P.J.: Concur in Judgment Opinion
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.